**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> FIG SOLUTIONS LIMITED, INC. <br><br> Defendant. | CIVIL ACTION NO.: 4:11-CV-00090-GAF |

**DEFAULT JUDGMENT ORDERING A PERMANENT INJUNCTION
AND ANCILLARY EQUITABLE RELIEF AGAINST DEFENDANT FIG**

On January 26, 2011, Plaintiff U.S. Commodity Futures Trading Commission ("CFTC" or "Commission") filed its Complaint for Permanent Injunction, Civil Monetary Penalties and Other Equitable Relief ("Complaint") in this matter alleging, *inter alia*, violations of Section 2(c)(2)(C)(iii)(I)(aa) of the Commodity Exchange Act ("Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Commission Regulation ("Regulation") 5.3(a)(6)(i), to be codified at 17 C.F.R. § 5.3(a)(6)(i). DE #1. The Complaint alleges that FIG is a Delaware corporation and sought, *inter alia*, injunctive relief and civil monetary penalties on the basis that FIG was acting as an unregistered retail foreign exchange dealer ("RFED") when it solicited or accepted orders from non-eligible contract participants ("non-ECPs") in connection with off-exchange margined or leveraged foreign currency ("forex") transactions. DE #1. The same day, the CFTC moved separately for injunctive relief. DE #3

and #4.  Service of the Complaint and summons was made on FIG by postage prepaid UPS overnight mail pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 4 and Missouri Supreme Court Rule 54.16.  DE #6-1.  Service of the CFTC's Motion for Preliminary Injunction was also made by postage prepaid UPS overnight mail.  DE #3 and #4.

FIG's answer or other responsive pleadings to the CFTC's Complaint were due on or before February 22, 2011.  FIG has failed to file an answer or otherwise defend this action within the time permitted by Fed. R. Civ. P. 12(a)(1).  On March 7, 2011, the CFTC, pursuant to Fed. R. Civ. P. 55(a), served and filed its Motion for Clerk's Entry of Default Against FIG.  DE #8.  The Clerk of the Court subsequently found FIG in default later that day.  DE #9.

The CFTC has submitted its Application for Entry of Default Judgment, Permanent Injunction and Ancillary Equitable Relief Against FIG ("Application") pursuant to Fed. R. Civ. P. 55(b)(2).  The Court has considered carefully the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Application, and all oppositions thereto, and being fully advised in the premises hereby

**GRANTS** the CFTC's Application and enters the following findings of fact and conclusions of law finding FIG liable as to all violations as alleged in the Complaint.  Accordingly, the Court now issues the following Order for Entry of Default Judgment, Permanent Injunction, and Ancillary Relief Against FIG ("Order"), which determines that FIG has violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act and Regulation 5.3(a)(6)(i).

# FINDINGS OF FACT

## A. Parties

1.  Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, as amended, to be codified at 7 U.S.C. §§ 1 *et seq*., and the Regulations thereunder, 17 C.F.R. §§ 1.1 *et seq*. (2010). The CFTC maintains an office in this District at Two Emanuel Cleaver II Boulevard, Suite 300, Kansas City, MO 64112.

2.  Defendant **FIG Solutions Limited, Inc.** is a Delaware corporation with its principal place of business located at 1521 Concord Pike #301, Wilmington, DE 19803. FIG was incorporated on July 15, 2009.

## B. Statutory and Regulatory Background

3.  Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, specifically states that:

> A person, unless registered in such capacity as the Commission by rule, regulation, or order shall determine . . ., shall not— (aa) solicit or accept orders from any person that is not an eligible contract participant in connection with agreements, contracts, or transactions described in clause (i) of this subparagraph entered into with or to be entered into with a person who is not described in item (aa), (bb), (dd), (ee), or (ff) of subparagraph (B)(i)(II).

4.  The transactions referred to include leveraged or margined forex transactions conducted with non-Eligible Contract Participants ("non-ECPs") at a Retail Foreign Exchange Dealer ("RFED"). These transactions do not result in actual delivery of the traded foreign currency within two days or create an enforceable obligation to deliver the foreign currency. *See* Section 2(c)(2)(C)(i)(II) of the Act, as amended by the CRA.

5. An Eligible Contract Participant ("ECP") is defined by the Act, in relevant part, as an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." *See* Section 1a(12)(A)(xi) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 1a(12)(A)(xi).

6. On October 18, 2010, the Commission enacted new regulations implementing certain provisions of Dodd-Frank and the CRA. For the purposes of forex transactions, the new regulations, among other things, require RFEDs to register with the CFTC.

7. For the purposes of Part 5 of the Regulations, an RFED An RFED is defined in Regulation 5.1(h)(1), to be codified at 17 C.F.R. § 5.1(h)(1), as any person that is, or offers to be, the counterparty to a retail forex transaction, except for a person described in sub-paragraph (aa), (bb), (cc)(AA), (dd), (ee), or (ff) of Section 2(c)(2)(B)(i)(II) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(B)(i)(II). These exceptions pertain to certain United States financial institutions, brokers and dealers registered under the Securities Exchange Act and associated persons thereof, futures commission merchants and affiliated persons thereof, financial holding companies, and RFEDs registered with the Commission.

8. Pursuant to Regulation 5.3(a)(6)(i), to be codified at 17 C.F.R. § 5.3(a)(6)(i), in connection with forex transactions, all RFEDs must be registered with the Commission as of October 18, 2010.

**C. FIG**

9. FIG has never been registered with the CFTC in any capacity.

10. Nonetheless, after October 18, 2010, FIG, through its web site, http://www.figfx.com/, has solicited or accepted orders for off-exchange leveraged forex

transactions from members of the general public who are not ECPs (including non-ECPs found within this District).

11. More specifically, FIG has solicited non-ECPs to

a.) "Open a forex trading account today;"

b.) "Trade foreign currencies online;"

c.) "Click here to open an online forex and CFD trading account online instantly;"

d.) "Join thousands of forex traders from 130 countries worldwide;" and

e.) "Take benefit of FIGfx broker's retail forex trading services;"

12. Further, FIG acts as an RFED when it offers to be the counterparty to retail forex transactions with members of the public. FIG specifically states on its website (emphasis supplied) that:

> FOREX IS AN OVER THE COUNTER (OTC) MARKET, MEANING THE FOREIGN CURRENCY TRADING YOU ARE ENTERING INTO IS NOT CONDUCTED ON AN EXCHANGE. AS A MARKET MAKER, **FIG Solutions IS THE COUNTERPARTY IN THESE TRANSACTIONS** AND, THEREFORE, ACTS AS THE BUYER WHEN YOU SELL AND THE SELLER WHEN YOU BUY.

13. The forex transactions FIG engages in neither result in delivery within two days nor create an enforceable obligation to deliver between a seller and a buyer who have the ability to deliver and accept delivery, respectively, in connection with their lines of business. *See* Section 2(c)(2)(C)(i)(II) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(i)(II). Rather, these forex contracts remain open from day to day and ultimately are offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

14. As of the date of this Order, FIG has not registered with the CFTC.

15. Furthermore, FIG is not one of the persons exempt from registration under Section 2(c)(2)(C), as amended by the CRA (a financial institution, registered broker or dealer, insurance company, financial holding company, or investment bank holding company) or excluded from the definition of RFED under Regulation 5.1(h)(1) (a financial institution, registered broker or dealer, futures commission merchant, financial holding company, or investment bank holding company).

16. Moreover, FIG acted as an RFED, as defined in Regulation 5.1(h)(1), to be codified at 17 C.F.R. § 5.1(h)(1).

## CONCLUSIONS OF LAW

17. Fed. R. Civ. P. 55(b)(2) provides that judgment by default may be entered by a district court. The grant or denial of a motion for default judgment lies within the district court's sound discretion. *Federal Trade Comm. v. Packers Brand Meats, Inc.*, 562 F.2d 9, 10 (8th Cir. 1977). Further, if a district court determines that a defendant is in default, then the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. See Fed. R. Civ. P. 8(b) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *Pope v. United States*, 323 U.S. 1, 12 (1944) (stating that it is "an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and give judgment"); *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986) (providing that well-pleaded allegations are taken as admitted on default judgment).

18. Given the procedural posture of this case and based upon the evidence before the Court, the allegations in the Complaint against FIG should be taken as true for purposes of the CFTC's Application and a default judgment should be entered against FIG.

**A. Jurisdiction and Venue**

19. Section 6c(a) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1(a), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

20. The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to Section 6c of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1, and Section 2(c)(2) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2).

21. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1(e), because Defendant transacts business in this District and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, and/or are about to occur within this District.

**B. FIG Violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa)**

22. FIG violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, by soliciting and taking orders from non-ECPs in connection with forex transactions at an RFED without being properly registered.

23. The transactions referred to are leveraged or margined off-exchange forex transactions conducted with non-ECPs at an RFED. These transactions do not result in actual

7

delivery of the traded foreign currency within two days or create an enforceable obligation to deliver the foreign currency. *See* Section 2(c)(2)(C)(i)(II), as amended by the CRA.

24. FIG solicits and enters into leveraged or margined forex transactions with non-ECPs that do not involve actual delivery of foreign currency or any obligation to do so. The transactions (*i.e.*, the buying and selling of foreign currency pairs) will occur between the non-ECPs and FIG. In other words, FIG is soliciting and entering into orders with non-ECPs on its own behalf. According to the information on its website, as well as information that is available from the applicable regulatory bodies, FIG is not one of the persons exempt from Section 2(c)(2)(C) (*i.e.*, a financial institution, registered broker-dealer, insurance company, financial holding company, or investment bank holding company).

25. FIG violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), by soliciting and taking orders from non-ECPs in connection with forex transactions at an RFED without being properly registered.

C. **FIG Violated Regulation 5.3(a)(6)(i), to be codified at 17 C.F.R. § 5.3(a)(6)(i)**

26. Regulation 5.3(a)(6)(i), to be codified at 17 C.F.R. § 5.3(a)(6)(i), provides that it is unlawful for any RFED to operate as such without registering with the Commission.

27. FIG violated Regulation 5.3(a)(6)(i), to be codified at 17 C.F.R. § 5.3(a)(6)(i), by operating as an RFED without properly registering.

## ORDER FOR PERMANENT INJUNCTION AND ANCILLARY RELIEF

28. The Commission has shown that FIG has engaged, is engaging, and is about to engage in acts and practices which violate Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(6)(i), to be codified at 17 C.F.R. § 5.3(a)(6)(i). Notwithstanding its default, the totality of the circumstances

establish that, unless restrained and enjoined by this Court, there is a reasonable likelihood that FIG will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act, as amended by the CRA, and the Regulations. In addition, the imposition of other ancillary equitable relief is required to comply with the basic objectives of the Act, as amended by the CRA, and the Regulations. Furthermore, the nature of FIG's violations and the need to deter others from committing similar violations of the Act and Regulations warrants the imposition of a civil monetary penalty.

**IT IS HEREBY ORDERED THAT:**

29. Defendant, FIG, has violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, and Regulation 5.3(a)(6)(i). Therefore, judgment shall be and hereby is entered in favor of the Plaintiff, U.S. Commodity Futures Trading Commission, and against Defendant FIG as follows**:**

> **A. Permanent Prohibition on Violations of Section 2(c)(2)(C)(iii)(I)(aa) of the Act and Regulation 5.3(a)(6)(i)**

30. FIG, all persons and entities insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of FIG, and all persons and entities insofar as they are acting in concert or participation with FIG who receive actual notice of this order by personal service or otherwise, shall be permanently prohibited, enjoined and restrained from directly or indirectly:

> a. engaging in any conduct in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), including, but not limited to, soliciting or accepting orders from any person that is not an ECP in connection with forex transactions; and
>
> b. engaging in any conduct in violation of Regulation 5.3(a)(6)(i), to be codified at 17 C.F.R. § 5.3(a)(6)(i), including, but not limited to, offering to be the counterparty to its customers' forex transactions.

### B. Removal of Website

31. FIG, all persons and entities insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of FIG, and all persons and entities insofar as they are acting in concert or participation with FIG who receive actual notice of this order by personal service or otherwise, shall remove or cause to be removed from the Internet all webpages posted or authorized by them to be posted in which they solicit or accept orders or accounts from non-ECPs in connection with forex transactions or offer to be the counterparty to customers' forex transactions whether through http://www.figfx.com/, the Uniform Resource Locater ("URL") associated with such domain name, and/or any other domain name or URL created, operated, hosted and/or authorized by FIG, in whole or in part. This includes, but is not limited to, submitting a removal request of the domain name(s) associated with the aforementioned conduct and corresponding URL(s) to the appropriate web-host provider and/or domain registration company.

32. Any person or entity providing web-hosting or domain name registration services in the United States for any website, domain name or affiliated URL under the ownership of FIG, in whole or in part, which FIG uses to solicit or accept orders or accounts from non-ECPs in connection with forex transactions at FIG or to offer to be the counterparty to customers' forex transactions, including, but not limited to, http://www.figfx.com/, the URL associated with such domain name, and/or any other domain name or URL created, operated, hosted and/or authorized by FIG, in whole or in part, who receives actual notice of this Order by personal service or otherwise shall:

> a. remove or cause to be removed from the Internet all webpages, within their control, which are posted or authorized or to be posted or authorized by FIG or any persons and entities insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or

> attorneys of FIG, in which FIG: 1) solicits or accepts orders or accounts from non-ECPs in connection with forex transactions at FIG; or 2) offers to be the counterparty to customers' forex transactions;
>
> b. preserve all documents related to any website operated, in whole or in part, under the name FIG.net, as well as any website that is substantially identical in appearance to that website; and
>
> c. immediately notify counsel for the CFTC of any other web page or website operated or controlled by or on behalf of FIG.

### C. Trading, Solicitation and Registration Prohibition

33. FIG, all persons and entities insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of FIG, and all persons and entities insofar as they are acting in concert or participation with FIG who receive actual notice of this order by personal service or otherwise, shall be permanently prohibited, enjoined and restrained from directly or indirectly:

> a. trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 1a);
>
> b. entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2010)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), for their own personal account or for any account in which they have a direct or indirect interest;
>
> c. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;
>
> d. soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;
>
> e. applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or

exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010); and

f. acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2010)), agent, or any other officer or employee of any person registered, exempted from registration or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010).

### D. Civil Monetary Penalty

34. FIG shall pay to the Commission a civil monetary penalty of $280,000, plus post-judgment interest.

35. Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on that day, pursuant to 28 U.S.C. § 1961(a).

36. FIG shall pay the civil monetary penalty by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. Unless the payment is made by electronic funds transfer, it shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> Attn: Marie Bateman – AMZ-300
> DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone: (405) 954-6569

37. If FIG chooses to make the payment by electronic funds transfer, it shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. FIG shall submit its payment with a cover letter that identifies it and the name and docket number of this proceeding. Copies of the cover letter and the form of payment shall be simultaneously transmitted to: David Meister, Director, Division of

Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581; Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address; and to Rosemary Hollinger, Regional Counsel, Division of Enforcement, Commodity Futures Trading Commission, at the following address: 525 W. Monroe Street, Suite 1100, Chicago, IL 60661.

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission, e-mail, United Parcel Service and Federal Express, upon FIG or any other entity or person that may be subject to any provision of this Order. Jennifer J. Chapin, Jeffery C. Le Riche, Stephen Turley, Joyce Brandt and/or Gina Weydert, all employees of the CFTC, are hereby specially appointed to serve process, including this Order and all other papers in this cause.

**IT IS FURTHER ORDERED** that all pleadings, correspondence, notices or other materials required by this Order shall be sent to Jennifer J. Chapin, Senior Trial Attorney, Division of Enforcement, Commodity Futures Trading Commission, Two Emanuel Cleaver II Blvd., Suite 300, Kansas City, MO 64112.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this cause to assure compliance with this Order and for all other purposes related to this action.

### D. Miscellaneous Provisions

Partial Payments:  Any acceptance by the CFTC of partial payment of the civil monetary penalty obligation shall not be deemed to be a waiver of the respective requirement of Defendants to make further payments pursuant to this Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

Equitable Relief: The equitable relief provisions of this Order shall be binding upon FIG and any person who is acting in the capacity of agent, employee, servant, or attorney of FIG, and any person acting in active concert or participation with FIG, who receives actual notice of this Order by personal service or otherwise.

Costs and Fees: Upon application by the CFTC to this Court for its costs and fees in bringing this action, FIG will be ordered to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2).

**SO ORDERED, ADJUDGED and DECREED**, this 21st day of June, 2011, at Kansas City, Missouri.

                                              s/ Gary A. Fenner
                                              Gary A. Fenner, Judge
                                              United States District Court